# STATE OF MICHIGAN

# COURT OF APPEALS

---

ANN WALDRON DAWSON, JEFFREY ALAN
GRUNOW, WAYNE ERXLEBEN, SHIRLEY
ERXLEBEN, LAURA GRACE STERENBERG,
GARY KIEVIT, and MARY KIEVIT,

        Plaintiff-Appellants,

v

CITY OF GRAND HAVEN,

        Defendant-Appellee.

UNPUBLISHED
December 29, 2016

No.   329154
Ottawa Circuit Court
LC No.   15-004224-CZ

---

Before:  BORRELLO, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Plaintiffs appeal as of right the August 25, 2015 order of the trial court that granted summary disposition under MCR 2.116(C)(8) to defendant.  We affirm.

More than 50 years ago, the "Dewey Hill monument" was donated to defendant as a memorial for those who served and died in the Vietnam War.  The monument was placed on Dewey Hill, a sand dune that defendant owned on the Grand River.  The Dewey Hill monument consisted of an elaborate lifting mechanism and foundation that was designed to maintain the sand dune.  When the lifting mechanism is raised, a cross is displayed.  The cross can be made into an anchor by placing attachments on the bottom and top of the cross.  For many years, defendant raised the lifting mechanism to display the anchor or the cross when requested by individuals in the community.  For many years, First Reformed Church, where several of the plaintiffs are members, paid the required fee and requested that the cross be displayed for its Worship on the Waterfront services, which were held at the waterfront stage and bleachers across the Grand River from Dewey Hill.

In January 2015, defendant passed Resolution 15-013.  Pursuant to the resolution, the lifting mechanism of the Dewey Hill monument could only be raised to display the anchor.  In their complaint, plaintiffs alleged that Resolution 15-013 violated the Free Speech Clause and the Equal Protection Clause of the Michigan Constitution.  Plaintiffs moved for summary disposition under MCR 2.116(C)(9) and (C)(10), while defendant cross-moved for summary disposition under MCR 2.116(C)(8).  The trial court granted summary disposition to defendant on the ground that the Dewey Hill monument was government speech.

-1-

On appeal, plaintiffs argue that the trial court misapplied *Pleasant Grove City, Utah v Summum*, 555 US 460; 129 S Ct 1125; 172 L Ed 2d 853 (2009), and *Walker v Texas Div, Sons of Confederate Veterans, Inc*, 576 US ___; 135 S Ct 2239; 192 L Ed 2d 274 (2015), in concluding that the Dewey Hill monument was government speech. According to plaintiffs, the Dewey Hill monument was a limited public forum and defendant engaged in viewpoint discrimination by excluding religious speech from the forum. We review a trial court's decision on a motion for summary disposition de novo. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). Summary disposition is proper under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012). A court must accept all well-pleaded factual allegations as true and construe them in a light most favorable to the nonmoving party. *Id.* A motion under MCR 2.116(C)(8) should be granted only when the claims alleged are so clearly unenforceable as a matter of law that no factual development could justify recovery. *Id.* We also review constitutional issues de novo. *Varran v Granneman (On Remand)*, 312 Mich App 591, 607; 880 NW2d 242 (2015).

The Michigan Constitution guarantees the freedom of speech: "Every person may freely speak, write, express and publish his views on all subjects, being responsible for the abuse of such right; and no law shall be enacted to restrain or abridge the liberty of speech or of the press." Const 1963, art 1, § 5.[1] "The Free Speech Clause restricts government regulation of private speech; it does not regulate government speech." *Pleasant Grove City*, 555 US at 467.[2] Government is entitled to say what it wishes, and to select the views that it wants to express. *Id.* "This freedom includes 'choosing not to speak' and 'speaking through the . . . removal' of speech that the government disapproves." *Mech v Sch Bd of Palm Beach Co, Florida*, 806 F3d 1070, 1074 (CA 11, 2015) (citation omitted).[3]

Under the Free Speech Clause, government is not without restriction in regulating private speech on government land. *Pleasant Grove City*, 555 US at 469. The United States Supreme Court has adopted a forum analysis; the extent to which government can control private expression on government land depends on the nature of the forum. *Cornelius v NAACP Legal*

---

[1] Although plaintiffs claimed in the complaint that Resolution 15-013 violated the Free Speech Clause and the Equal Protection Clause of the Michigan Constitution, plaintiffs have made no argument regarding equal protection. Accordingly, plaintiffs have abandoned any claim that Resolution 15-013 violates the Equal Protection Clause. See *Peterson Novelties, Inc v Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003)

[2] Because the Michigan Constitution provides the same protection for the freedom of speech as the United States Constitution, this Court may consider federal authority when determining the extent of Michigan's free speech protection. *Thomas M Cooley Law School v Doe 1*, 300 Mich App 245, 256; 833 NW2d 331 (2013).

[3] Other constitutional provisions, such as the Establishment Clause, and statutes may limit government speech. *Walker*, 576 US at ___; 135 S Ct at 2246; 192 L Ed 2d at 282; *Pleasant Grove City*, 555 US at 468.

*Defense & Ed Fund, Inc*, 473 US 788, 800; 105 S Ct 3439; 87 L Ed 2d 567 (1985). For traditional public forums, which are those forums that have traditionally been available for public expression, such as streets and parks, any content-based restrictions are subject to strict scrutiny. *Perry Ed Ass'n v Perry Local Educators' Ass'n*, 460 US 37, 45; 103 S Ct 948; 74 L Ed 2d 794 (1983); *Hotel Employees & Restaurant Employees Union, Local 100 of New York, NY & Vicinity, AFL-CIO v City of New York Dep't of Parks & Recreation*, 311 F3d 534, 545 (CA 2, 2002). Content-based restrictions for "designated public forums," which are created when government opens up property that has not traditionally been regarded as a public forum for use by the public at large for assembly and speech, are also subject to strict scrutiny. *Pleasant Grove City*, 555 US at 469-470; *Cornelius*, 473 US at 802. Government may also create a "limited public forum;" this forum is created when government reserves a forum for use by certain groups, such as student groups, or for discussion of certain subjects, such as school board business. *Walker*, 576 US at ___; 135 S Ct at 2250; 192 L Ed 2d at 286; *Perry Ed Ass'n*, 460 US at 46 n 7. Restrictions for limited public forums must not discriminate on the basis of viewpoint, and they must be reasonable in light of the purpose served by the forum. *Good News Club v Milford Central Sch*, 533 US 98, 106; 121 S Ct 2093; 150 L Ed 2d 151 (2001). "The government does not create a public forum by inaction or by permitting limited discourse, but only by intentionally opening a nontraditional forum for public discourse." *Cornelius*, 473 US at 802.

In *Pleasant Grove City*, 555 US 460, the city owned a 2-1/2 acre park, which contained 15 permanent monuments. Eleven of the monuments, including a Ten Commandments monument, had been donated by private groups or individuals. The respondent, a religious organization, requested permission to erect in the park a monument that listed its seven aphorisms. After the city rejected the request, the respondent sued the city, claiming that the city violated the Free Speech Clause of the United States Constitution by accepting the Ten Commandments monument and rejecting its monument. The United States Supreme Court stated, "There may be situations in which it is difficult to tell whether a government entity is speaking on its own behalf or is providing a forum for private speech, but this case does not present such a situation. Permanent monuments displayed on public property typically represent government speech." *Id.* at 470.

The United States Supreme Court explained that government entities have long used monuments to speak to the public. *Id.* A monument, according to the Supreme Court, by definition, is a structure that is designed as a means of expression, and when a government entity arranges for the construction of a monument, it does so because it wants to convey some thought or instill some feeling in those who see it. *Id.* Certainly, stated the Supreme Court, a monument that is commissioned and financed by a government entity for placement on government land constitutes government speech. *Id.* Likewise, the Supreme Court opined that a privately financed and donated monument that a government entity accepts and displays on government land is government speech. *Id.* It stated:

> It certainly is not common for property owners to open up their property for the installation of permanent monuments that convey a message with which they do not wish to be associated. And because property owners typically do not permit the construction of such monuments on their land, persons who observe donated monuments routinely—and reasonably—interpret them as conveying some

-3-

message on the property owner's behalf. In this context, there is little chance that observers will fail to appreciate the identity of the speaker. This is true whether the monument is located on private property or on public property, such as national, state, or city park land. [*Id.*]

The Supreme Court believed it was fair to say that government entities are selective in the monuments they accept. *Id.* at 471-472. It stated:

Government decisionmakers select the monuments that portray what they view as appropriate for the place in question, taking into account such content-based factors as esthetics, history, and local culture. The monuments that are accepted, therefore, are meant to convey and have the effect of conveying a government message, and they thus constitute government speech. [*Id.* at 472.]

According to the Supreme Court, the monuments in the 2-1/2 acre park were government speech. *Id.* The city had controlled the messages conveyed by the monuments by exercising approval over the selection of the monuments. *Id.* at 473.

The Supreme Court rejected an argument, premised on an analogy between permanent monuments and the delivery of speeches, that a public park was a traditional public forum for monuments. *Id.* at 478-480. The Supreme Court explained that forum analysis was applied in situations where government property was capable of accommodating a large number of speakers without defeating the essential function of the land. *Id.* at 478. But a public park could not be opened up for the installation of permanent monuments by every person or group wanting to engage in that form of expression. *Id.* at 479. However, the Supreme Court cautioned:

To be sure, there are limited circumstances in which the forum doctrine might properly be applied to a permanent monument—for example, if a town created a monument on which all of its residents (or all those meeting some other criterion) could place the name of a person to be honored or some other private message. But as a general matter, forum analysis simply does not apply to the installation of permanent monuments on public property. [*Id.* at 480.]

Our analysis is limited to the Dewey Hill monument. We find no merit to plaintiff's claim that the Dewey Hill monument should be considered part of an "outdoor public theatre" that includes the waterfront stage and bleachers. The relevant forum is defined by the access sought by the speaker. *DiLoreto v Downey Unified Sch Dist Bd of Ed*, 196 F3d 958, 965 (CA 9, 1999). There has been no claim that plaintiffs, or even First Reformed Church, have been denied access to the waterfront stage and bleachers. Indeed, the complaint indicates that First Reformed Church was still using the waterfront stage and bleachers for its Worship on the Waterfront services. Rather, the claim is that Resolution 15-013 denied plaintiffs some use of the Dewey Hill monument.

Dewey Hill is owned by defendant, as is the Dewey Hill monument. The Dewey Hill monument is a permanent monument, although it does not display a permanent message. The lifting mechanism can be raised to either display the cross or the anchor. But this fact and the fact that defendant would raise the lifting mechanism upon request and payment of a fee do not

-4-

place the Dewey Hill monument in the "limited circumstances" where a forum analysis might be properly applied to a permanent monument. *Pleasant Grove City*, 555 US at 480. The Dewey Hill monument was donated to defendant. By accepting the Dewey Hill monument and allowing it to be placed on Dewey Hill, defendant agreed that the messages conveyed when the lifting mechanism was raised and the cross or the anchor were displayed were ones that it wanted to convey or to which it wanted to be associated. See *id.* at 470-472. There is no claim that defendant allowed any symbol, other than the cross or the anchor, to be displayed when the lifting mechanism was raised. In other words, defendant maintained direct control over the messages conveyed by the Dewey Hill monument. Because defendant did not allow individuals to place private messages, even messages limited to a certain topic, on the Dewey Hill monument when the lifting mechanism was raised, the Dewey Hill monument is government speech and forum analysis is inapplicable to it.

*Walker*, 576 US ___; 135 S Ct 2239; 192 L Ed 2d 274, where the United States Supreme Court considered whether specialty license plates are government speech, supports this conclusion. In *Walker*, the Supreme Court reasoned that Texas's policies and the nature of the specialty plates indicated that Texas did not intend the plates to serve as a designated public forum or a limited public forum because, in part, the state exercised final authority over the designs of the specialty plates and because license plates have traditionally been used for government speech. *Id.* at ___; 135 S Ct at 2250-2251; 192 L Ed 2d at 286-287. Likewise, the nature of the Dewey Hill monument and defendant's policies indicate that defendant did not intend the monument to serve as a limited public forum. Permanent monuments have traditionally conveyed messages from government, *Pleasant Grove City*, 555 US at 470-471, and defendant exercised authority over the messages conveyed by the monument. Defendant only allowed the cross or the anchor to be displayed when the lifting mechanism of the Dewey Hill monument was raised. And the fact that defendant allowed two messages to be conveyed through the Dewey Hill monument does not mean that the messages sent were not those of defendant. See *Walker*, 576 US at ___; 135 S Ct at 2251-2252; 192 L Ed 2d at 287.

We acknowledge that, although defendant exercised authority over the messages conveyed by the Dewey Hill monument, it allowed individuals to help propagate those messages. Individuals could request that the lifting mechanism be raised so that the cross or the anchor was visible, and defendant received payment of a fee whenever individuals made such a request. However, in *Walker*, the United States Supreme Court specifically rejected arguments that a forum analysis is applicable when individuals assist in propagating a message and when government profits from speech. *Id.* at ___; 135 S Ct at 2251-2252; 192 L Ed 2d at 287-288. Regarding profits, the Supreme Court stated, "The existence of government profit alone is insufficient to trigger forum analysis." *Id.* at ___; 135 S Ct at 2252; 192 L Ed 2d at 287-288. Based on *Walker*, defendant could exercise its freedom to speak, even when it receives assistance, including in monetary form, from individuals for the purpose of conveying its message. By accepting the Dewey Hill monument and exercising authority over the messages conveyed by it, it is clear that defendant was speaking through the monument. See *id.* at ___; 135 S Ct at 2252; 192 L Ed 2d at 288.

We are not persuaded by plaintiffs' argument that the Dewey Hill monument should be considered a limited public forum because Resolution 15-013 provided that Dewey Hill was a limited public forum. Whether the Dewey Hill monument is a limited public forum is a question

of law, see *Mich United Conservation Clubs v Dep't of Treasury*, 239 Mich App 70, 76; 608 NW2d 141 (1999), aff'd 463 Mich 995 (2001) (stating that constitutional issues are questions of law); *Helms v Zubaty*, 495 F3d 252, 256 (CA 6, 2007) (stating that whether a county official's agreement that he had an open door policy converted his office into a designated public forum was a question of law), and we are not bound by a party's statement of law, *Kimmelman v Heather Downs Mgt Ltd*, 278 Mich App 569, 576; 753 NW2d 265 (2008).

In conclusion, the Dewey Hill monument is government speech. Because the Free Speech Clause does not regulate government speech, *Pleasant Grove City*, 555 US at 467, and because the freedom of government to speak includes the right to removal of speech with which the government disapproves, *Mech*, 806 F3d at 1074, Resolution 15-013, which prohibited the lifting mechanism of the Dewey Hill monument from being raised to show the cross, did not violate the Free Speech Clause. We affirm the trial court's grant of summary disposition to defendant.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Jane E. Markey